IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOWARD REIN,<br><br>Claimant,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>Respondent. | No. 16 C 10410<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Claimant Howard Rein ("Claimant") seeks review of the final decision of the Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.] The parties have filed cross-motions for summary judgment [ECF Nos. 14 and 21] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 14] is granted, and the Commissioner's Motion [ECF No. 21] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On May 3, 2013, Claimant filed his claims for DIB and SSI, alleging the onset of his disability as of May 13, 2012. (R. 20.) These applications were denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On December 11, 2014, Claimant was represented by counsel and appeared and testified at a hearing before ALJ Jessica Inouye. (R. 33–99.) The ALJ also heard testimony from vocational expert ("VE") Susan Entenberg. (*Id.*)

On April 10, 2015, the ALJ denied Claimant's claims for DIB and SSI, based on a finding that he was not disabled under the Act. (R. 20–28.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations ("SSR").[1] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since his alleged onset date of May 13, 2012. (R. 22.) At step two, the ALJ found that Claimant had the severe impairment of schizophrenia. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P., Appendix 1. (*Id.*)

The ALJ then found Claimant had the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels, with the following nonexertional limitations:

---

[1] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can

2

> Understand, remember, and carry out no more than simple, routine, repetitive tasks; no more than occasional changes in the work tasks; no more than occasional decision making required by the work; no more than occasional completion of written forms as part of the work; no more than occasional interaction with others; no tandem tasks; no team work; learns best by demonstration; is allowed to take notes; and can sustain concentration, persistence, and pace to complete work functions, as described, in two-hour increments.

(R. 24.) At step four, the ALJ determined that Claimant was unable to perform any past relevant work. (R. 27.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform, such as dishwasher, packer, or cleaner. (R. 28.) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (*Id.*) The Appeals Council declined to review the matter on September 2, 2016, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

---

still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant alleges a number of errors on appeal. First, Claimant asserts that the ALJ improperly evaluated his subjective statements about his symptoms and his credibility. [ECF No. 14, at 4–16.] Second, Claimant contends that the ALJ improperly evaluated the opinions of his treating psychiatrist, Dr. Weinstein. (*Id.*) Finally, Claimant argues that the mental RFC is not supported by substantial evidence. (*Id.*)

**A.     The Credibility Determination**

Because an RFC assessment often will "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court first addresses Claimant's argument that the ALJ improperly analyzed his statements about his symptoms and his credibility. *See Bjornson v. Astrue,* 671 F.3d 640, 645

4

(7th Cir. 2012). The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.[3] Although an ALJ's credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

On the record in this case, the Court finds that the reasons provided by the ALJ for her adverse credibility determination are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).

To begin, the ALJ's adverse credibility determination rested in large part on Claimant's admission that he felt capable of working and was actively seeking employment. (R. 25–26.) The ALJ placed great emphasis on the fact that Claimant was visiting the Jewish Vocational Center in an effort to find new work and discussed "job prospects" at a number of his

---

[3] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued her opinion on April 10, 2015. (R. 28.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

5

psychotherapy treatment sessions. (*Id.*) The ALJ concluded that, "in general, while the medical evidence of record indicates that the claimant does have some issues with mental health impairments, there is no indication that they were so severe that the claimant did not *feel* capable of working. (R. 25) (emphasis added).

It is well-recognized that "persisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a strong work ethic or overly-optimistic outlook rather than an exaggerated condition." *Ghiselli*, 837 F.3d at 778; *see also Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (noting that a desire to work is consistent with an inability to work). Moreover, a claimant's desire to work, but inability to find work, is "consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Thus, Claimant's desire to work, by itself, should not be used to discount his credibility because a desire to work—or a belief that one is capable of working—does not automatically translate into an *ability* to perform full-time work. *Id.* The same can be said for Claimant's attempts at obtaining full-time employment with the assistance of the Jewish Vocational Center.

In addition, while the Court recognizes that many of Dr. Weinstein's notes do reflect some discussion of "issues related to job search" and "occupational issues" at Claimant's psychotherapy sessions (*See, e.g.*, R. 366–72), these notes do not provide any insight into the content of those discussions. Rather than inquiring further as to the nature of those discussions, the ALJ assumed Claimant's frequent discussions with Dr. Weinstein about his job search and "occupational issues" indicated Claimant's symptoms were less severe than alleged and that he was capable of performing full-time work. This was improper, especially given Dr. Weinstein's opinions regarding Claimant's severe limitations in executive functioning. Similarly, the ALJ

6

noted that Claimant "continues to accumulate skills by taking classes and regularly visiting with [the] Jewish Vocational Center." (R. 26.) But the ALJ offered no explanation as to how this undermines Claimant's credibility.

Finally, the ALJ considered some of Claimant's daily activities, noting that Claimant "takes care of his elderly father, goes bowling [once a month], reads on a daily basis, and uses public transportation. He also goes to weekly dinners with his brothers and attends social events for singles." (R. 26.) The ALJ concluded that, "for these reasons, the claimant's allegations of having a disabling condition are not found to be credible." (*Id.*) While ALJs are permitted to consider daily activities when assessing a claimant's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs must not place "undue weight" on those activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2017); *see Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place"); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Moreover, when an ALJ does examine a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Absent from the ALJ's discussion here is an explanation as to how Claimant's ability to engage in these particular daily activities undermines his allegations or translates into to an ability to carry out full-time work.

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*,

7

297 F.3d at 595. While the Court does not hold that the ALJ should have accepted Claimant's allegations, the foundation underlying her assessment was inadequate. Greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). On remand, the ALJ should re-evaluate Claimant's subjective symptom statements pursuant to SSR 16-3p, with due regard to the full range of medical evidence, sufficiently articulate how she evaluated that evidence, and then explain the logical bridge from the evidence to her conclusions.

**B.    The Treating Physician's Opinion**

Claimant also asserts that the ALJ improperly assessed the opinion of his treating psychiatrist, Dr. Weinstein. [ECF No. 14, at 4–9]. Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c).[4] Because of a treating physician's greater familiarity with the claimant's condition and the progression of his impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d at 870. When an ALJ decides not to give controlling weight to a claimant's treating physician, the ALJ must provide a sound explanation for doing so. *Punzio*, 630 F.3d at 710; 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our . . . decisions for the weight we give your treating source's opinion.").

Even when an ALJ provides good reasons for not giving controlling weight, she still must determine and articulate what weight, if any, to give the opinion. *Scott v. Astrue*, 647 F3d 734,

---

[4] Amendments to the regulations were published on January 18, 2017, Federal Register, Vol. 82, No. 11, page 5844-84. https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00455.pdf#page29. Since the amendments only apply to claims filed on or after March 27, 2017, all references to the regulations in this opinion refer to the prior version.

8

740 (7th Cir. 2011). In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss*, 555 F.3d at 561.

Here, the ALJ considered two Mental RFC Questionnaires completed by Dr. Weinstein in August 2013 and October 2014. (R. 341–45, 349–53.) The ALJ recognized that Dr. Weinstein is Claimant's treating physician, "allowing his opinion for greater weight," but nevertheless afforded Dr. Weinstein's opinions "little weight" due to "internally inconsistent statements" and a "failure to elaborate on such severe work-related limitations." (R. 26.) The Court concludes that the ALJ's decision to accord Dr. Weinstein's opinions "little weight" is not supported by substantial evidence or at a minimum is not sufficiently explained.

The ALJ identified two sets of statements in support of her conclusion that Dr. Weinstein's opinions were "internally inconsistent." (R. 26.) The first inconsistency noted by the ALJ was in the August 2013 assessment. Dr. Weinstein initially opined that Claimant would not be able to maintain a regular workweek due to symptoms and treatment, but then later indicated that Claimant would not miss any days of work on a monthly basis as a result of his impairments or treatments. (R. 26, 343, 345.) It is true that these two opinions appear to be inconsistent, and the ALJ was entitled to take this inconsistency into account in assessing the doctor's opinions. *See Clifford*, 227 F.3d at 871 (internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion so long as the ALJ provides an

9

adequate explanation). However, the Court also notes that in October 2014, Dr. Weinstein revised his opinions to reflect that Claimant might be absent about two days a month because of his impairments or treatments.

The ALJ also found an inconsistency between Dr. Weinstein's October 2014 opinion that Claimant is unable to meet the competitive standards for remembering work-like procedures and his opinion that Claimant is capable of understanding and remembering detailed instructions. (R. 26, 351–52.) But the ALJ failed to note that Dr. Weinstein actually indicated that Claimant's ability to understand and remember detailed instructions is "seriously limited." (R. 352.) In the context of the Mental RFC Questionnaire, "seriously limited" means that the ability to function in that area "is seriously limited and less than satisfactory, but not precluded in all circumstances." (R. 351.) In the Court's view, this is a significant qualification. And, in any event, the Court is not prepared to conclude that these minor inconsistencies identified by the ALJ are fatal to the credibility of the treating doctor's other opinions or his ultimate conclusions regarding the nature and severity of Claimant's condition and his related functional limitations. *See Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016).

It is important to note, though it may be obvious, that the Court is not simply disagreeing here with the way in which the ALJ weighed conflicting evidence. Rather, in the Court's view, the ALJ's decision to discount Dr. Weinstein's opinion based upon the reasons she gave is not supported by substantial evidence in the record or explained sufficiently to merit acceptance by this Court of the ALJ's rationale and conclusion. *Clifford*, 227 F.3d at 871.

The ALJ's second reason for further discounting Dr. Weinstein's opinions—his "failure to elaborate on such severe work-related limitations"—also falls short. (R. 26.) In August 2013, Dr. Weinstein explained that Claimant had severe difficulties with decision-making, executive

10

function, following multi-step commands without severe anxiety and obsessive uncertainty, figuring out logistics of transportation, and paperwork. (R. 342–43.) On the October 2014 assessment form, Dr. Weinstein noted that Claimant had circumstantial thought processes and a restricted affect which could be seen as problematic by coworkers. (R. 349, 352.) He again indicated that Claimant experienced significant difficulties with executive function and managing logistical issues. (*Id.*) Dr. Weinstein explained that Claimant is easily overwhelmed by decisions, following multi-step command, and dealing with changes in routines. (R. 351.) He also noted that Claimant has difficulty processing instructions, and requires constant repetition and reassurance. (R. 352.) Additionally, Dr. Weinstein specifically indicated that he kept "very skeletal note[s], for confidentiality reasons," and invited the ALJ to contact him with any questions. (R. 365.) The ALJ declined to do so.

Further, even assuming the ALJ provided "good reasons" for not affording Dr. Weinstein's opinion controlling weight, she was still required to address the factors set forth in 20 C.F.R. § 404.1527 to determine what weight to give the opinion. *See* SSR 96-2p, at *4.[5] SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R § 404.1527." *Id.*; 20 C.F.R. § 404.1527(c); *Yurt*, 758 F.3d at 860; *Moss*, 555 F.3d at 561. Here, the ALJ afforded Dr. Weinstein's opinion only "little weight," but failed to adequately address or otherwise demonstrate consideration of many of the other enumerated factors. True, the ALJ acknowledged Dr. Weinstein's status as Claimant's treating physician, but that factor should have weighed toward affording the opinion more deference, not less. (R. 26.) But the ALJ's conclusory statement that "all medical opinions

---

[5] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (March 27, 2017).

must be considered an[d] evaluated in accordance with the guidance provided at 404.1527 . . . and SSR 96-2p" is simply boilerplace and, as such, is insufficient. *Musgrove v. Berryhill*, 2018 WL 1184734, at *7 (N.D. Ill. Mar. 7, 2018); *see also Scrogham v. Colvin*, 765F.3d 685, 697–98 (7th Cir. 2014) (stating that "[t]he ALJ . . . should have addressed these factors in her opinion to enable [the Court] to review whether she engaged in the correct methodology"). In this case, multiple factors favor crediting Dr. Weinstein's opinions and "[p]roper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Weinstein's] opinions." *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Accordingly, remand is necessary for the ALJ to properly analyze and sufficiently explain the weight to be afforded to the opinions of Dr. Weinstein.

### C. Other Issues

Because the Court remands on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. The Commissioner, however, should not assume these issues were omitted from the opinion because no error was found.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to do what is necessary to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 14] is granted, and the Commissioner's Motion [ECF No. 21] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 23, 2018